1
2
3
4
5
6

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7
8

| | |
|---|---|
| LEDA HEALTH CORPORATION, a Delaware Corporation, | No. |
| Plaintiff, | PLAINTIFF'S COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF |
| v. | JURY DEMAND |
| JAY ROBERT INSLEE, in his official capacity as Governor of Washington, and ROBERT WATSON FERGUSON, in his official capacity as Attorney General of Washington, | |
| Defendants. | |

Plaintiff, LEDA HEALTH CORPORATION, a Delaware corporation ("Leda Health"), by and through undersigned counsel, hereby sues Defendants, JAY ROBERT INSLEE, in his official capacity as Governor of Washington ("Governor Inslee"), and ROBERT WATSON FERGUSON, in his official capacity as Attorney General of Washington ("Attorney General Ferguson" and collectively with Governor Inslee, "Defendants"), and states:

## INTRODUCTION

1.      Leda Health is a company that developed Early Evidence Kits ("EEKs") to enable survivors of sexual assault to self-collect and store evidence, including DNA,

COMPLAINT - 1

when a traditional sexual assault forensic exam is not possible or against the survivor's wishes. Leda Health tells sexual assault survivors that EEKs can supplement what the government offers.

2.      Many survivors do not want to endure traditional forensic exams after experiencing rape. Leda Health meets survivors where they are and affords them options. EEKs allow survivors who do not want a traditional "rape kit" test to gather critical evidence in a safe, private, and effective way.

3.      EEKs consist almost entirely of common products that are legal everywhere. The contents of an EEK—things like diagnostic swabs, plastic storage bags, and a ballpoint pen—are unremarkable items that can be found in every drug store in the country. Leda Health provides these items to survivors who may want alternatives or additional resources beyond what the government offers.

4.      What Leda Health *tells* sexual assault survivors about these items—not the items themselves—has required Leda Health to file this lawsuit.

5.      Because of Leda Health's message, the State of Washington deliberately and specifically targeted Leda Health and EEKs by passing Wash. Rev. Code § 5.70.070 (the "Statute"), which Governor Inslee signed into law on May 4, 2023, and it became effective on July 23, 2023.

6.      Designed with Leda Health explicitly in mind, the Statute prohibits "marketing or otherwise presenting" sexual assault kits as "over-the-counter, at-home, or self-collected" or indicating that the kit "may be used for the collection of evidence of sexual assault other than by law enforcement or a health care provider."

## PARTIES AND JURISDICTION

7.      Plaintiff Leda Health brings this action pursuant to 42 U.S.C. § 1983 for violations of civil rights under the First and Fourteenth Amendments to the United

COMPLAINT - 2

1  States Constitution. This Court has subject-matter jurisdiction pursuant to 28 U.S.C.

2  § 1331 and § 1343(3) and (4). Venue is proper under 28 U.S.C. § 1391. Declaratory

3  relief is authorized by 28 U.S.C. §§ 2201 and 2202.

4        8.     Leda Health is a Delaware corporation that currently has headquarters

5  in Pittsburgh, Pennsylvania.

6        9.     Governor Inslee is the Governor of the State of Washington. In that

7  capacity, he is empowered to ensure that the laws of the State are faithfully executed.

8  *See* Wash. Const. art. III, § 5. Governor Inslee is sued in his official capacity.

9       10.    Attorney General Ferguson is the Attorney General of the State of

10  Washington. In that capacity, he serves as the legal advisor to all state officers

11  concerning Washington law. *See* Wash. Const. art. III, § 21. Attorney General

12  Ferguson is sued in his official capacity.

13  **FACTUAL ALLEGATIONS**

14  **Leda Health and EEKs**

15       11.    The State of Washington wanted Leda Health to stop talking about

16  EEKs. Because it cannot stop the sale of the common, everyday items within the

17  EEKs, they have instead sought to stop Leda Health from marketing, advertising, or

18  even speaking about the kits.

19       12.    Leda Health developed EEKs with the assistance of healthcare

20  professionals and advocates to enable survivors to self-collect and safely store

21  evidence such as DNA. EEKs are a tool that supplements the existing options like

22  tests performed at a hospital or by police.

23       13.    Leda Health does not sell EEKs directly to individuals on its website, in

24  Washington, or anywhere. Leda Health sells EEKs to companies or entities with

25  which it has partnered.

COMPLAINT - 3

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

14.     Leda Health tells individuals about the contents of EEKs. EEKs do not contain a single item that the State of Washington contends is dangerous to individuals. Nor does the State suggest that Leda Health misrepresents the quality of what it offers in an EEK. Each EEK contains:

      a.  Four (4) sets of diagnostic swabs;

      b.  An instruction manual;

      c.  A form for documenting the sexual assault;

      d.  Sterile water for swabbing dry areas;

      e.  A ballpoint pen for filling out the intake form and completing chain-of-custody documentation;

      f.  Unique barcodes on each kit;

      g.  Two plastic bags with unique barcodes for storing garments and other relevant items;

      h.  A prepaid FedEx shipping bag for shipping to the lab; and

      i.  Tamper-evident tape.

15.     Any sexual assault survivor could obtain these items to self-collect evidence without using an EEK or even knowing about Leda Health.

16.     Leda Health tells individuals that EEKs can be helpful but that they are not a medical substitute for seeking in-person care. In fact, Leda Health encourages survivors to seek in-person care if possible, as stated within the EEKs' instructions.

17.     After an EEK is complete, a survivor has three options: (1) She can send the EEK for testing using the prepaid FedEx shipping bag contained in the EEK; (2) If the survivor received the EEK through Leda Health's partnership with a clinic or hospital, she can store the kit at the institution; or (3) She can submit the kit to law enforcement.

COMPLAINT - 4

18.     If the survivor chooses to send the EEK for lab testing using the prepaid FedEx shipping bag, it will be processed by Leda Health's partner lab, which is ISO/IEC 17025 accredited.

19.     The lab will provide a lab report summary describing the samples collected in the EEK and the lab's testing methods, as shown in <u>Exhibit A</u>.

20.     In addition to the summary, Leda Health's partner lab provides a full chain-of-custody document and in-depth report, as shown in <u>Exhibit B</u>.

21.     None of this is illegal. Rather, the State of Washington is upset about what Leda Health *tells* survivors they can *do* with perfectly legal items. The core target of the State is the message Leda Health chooses to convey to sexual assault survivors.

### <u>Washington Targets Leda Health's Speech</u>

22.     In October 2022, Attorney General Ferguson's office ("AGO") sent a cease-and-desist letter to Leda Health threatening to prosecute it for "unfair and deceptive practices" under the Washington Consumer Protection Act unless Leda Health agreed to "immediately cease and desist from advertising, marketing, and sales" of EEKs in Washington.

23.     In the letter, the AGO cited Leda Health's website that the company "extend[s] a holistic suite of services designed to meet the needs of survivors of sexual assault . . . From 24/7 live support from our Care Team, self-administered DNA collection, assistance in finding a hospital or other services and holistic trauma healing . . . ." The AGO also noted that Leda Health refers to its self-administered DNA collection kits as "Early Evidence Kits." The AGO called Leda Health's marketing and advertising of its services and EEKs "schemes" and alleged that Leda Health's "claims regarding the admissibility" of EEKs are "patently false."

COMPLAINT - 5

24.     In response to the AGO's cease and desist demand, Leda Health ceased all marketing and sales activity in the State of Washington. The AGO took no further action.

25.     Three months later, on January 24, 2023, Washington State Representatives Gina Mosbrucker, Tina Orwall, Kelly Chambers, Jenny Graham, Skyler Rude, and Alicia Rule of the Washington House of Representatives introduced House Bill 1564 ("Bill"). 2023 Washington House Bill No. 1564, State of Washington - 68th Legislature. As originally written, the Bill prohibited the sale, offer, or provision of an "over-the-counter sexual assault kit." "Over-the-counter sexual assault kit" was defined as a sexual assault or rape kit that:

     a.  Is marketed or presented as over-the-counter, at-home, or self-collected;

     b.  Is offered for sale or as a sample to members of the public; and

     c.  Purports to allow an individual to independently collect evidence of a sexual assault outside of a collecting facility.

26.     Leda Health was the target of the Bill. A Fiscal Note accompanying the Bill stated that the AGO's Consumer Protection Division "is only aware of one company engaged in the marketing and sale of over-the-counter sexual assault kits"—*i.e.*, Leda Health.

27.     On February 2, 2023, Representative Mosbrucker sent an email to other members of the House of Representatives, admitting that many of them "asked for meetings with Leda Health" to discuss the Bill. Representative Mosbrucker characterized Leda Health's EEKs as "over the counter" sexual assault kits and "do it yourself" rape kits. Representative Mosbrucker also stated that she was asked to "provide a background and facts," but instead referred the email's recipients to a one-sided local news clip. In that video, a layperson baselessly criticized Leda Health as

COMPLAINT - 6

"predatory" and "selling a Q-tip in a box." Also in the clip, Attorney General Ferguson claimed that Leda Health misleads sexual assault survivors on the admissibility of EEK evidence.

28.     Despite the public mischaracterization of Leda Health's products and services, members of the public expressed their support for providing survivors with the option of utilizing EEKs and urged legislators to vote against the Bill. For example, in a letter to Representative Rule, one Washington resident wrote:

> I work at a prosecutor's office and have boots-on-the-ground experience with crime victims, including survivors of rape. Now more than ever it's important to fight the increased hatred and violence we're seeing, especially toward women. While I understand the intent of this bill is to protect survivors of sexual assault and to promote successful investigations and prosecutions of sexual offenses, I believe that this bill goes too far and would actually limit access to vital resources for survivors of sexual assault.
>
> At-home sexual assault kits can promote engagement with healthcare providers and gives access to follow-up care that they may not otherwise have the resources to obtain. Additionally, these kits can help survivors make the decision to report their assault and connect them to their community and other vital resources.

29.     The Senate Bill Report characterized the Bill as follows: "The advertising campaign for [Leda's] products has created the false perception that do-it-yourself (DIY) kits have the same evidentiary value as evidence collected by a medical professional, and that sexual assault nurse examiner ("SANE") examinations are costly, retraumatizing, and inaccessible. . . . This bill prevents the spread of misinformation and false hope by companies peddling DIY kits." The only company that offers such products is Leda Health.

30.     Public criticism of the Bill did not prevent its passage. On February 27, 2023, the Washington House of Representatives sent the Bill to the Senate, which

COMPLAINT - 7

1   amended the Bill, then passed it on April 7, 2023. The House passed the amended

2   Bill on April 13, 2023.

3       31.    On May 4, 2023, Governor Inslee signed the Bill, codifying it as Wash.

4   Rev. Code Ann. § 5.70.070 (hereinafter the "Statute").

5       32.    The Statute reads:

6   (1) For purposes of this section:

7       (a) "Health care facility" means a hospital, clinic, nursing home,
    laboratory, office, or similar place situated in Washington state
8       where a health care provider provides health care to patients.

9       (b) "Health care provider" means a person licensed, certified, or
    otherwise authorized or permitted by law, in Washington state,
10      to provide health care in the ordinary course of business or
    practice of a profession, and includes a health care facility.
11
    (c) "Person" means an individual, corporation, business trust,
12      estate, trust, partnership, limited liability company, association,
    joint venture, or any other legal or commercial entity. The term
13      does not include a government or governmental subdivision,
    agency, or instrumentality.
14
    (d) "Sexual assault kit" means a product with which evidence of
15      sexual assault is collected.

16  (2) A person may not sell, offer for sale, or otherwise make available a
    sexual assault kit:
17
    (a) That is marketed or otherwise presented as over-the-counter,
18      at-home, or self-collected or in any manner that indicates that the
    sexual assault kit may be used for the collection of evidence of
19      sexual assault other than by law enforcement or a health care
    provider; or
20
    (b) If the person intends, knows, or reasonably should know that
21      the sexual assault kit will be used for the collection of evidence of
    sexual assault other than by law enforcement or a health care
22      provider.

23  (3) The legislature finds that the practices covered by this section are
    matters vitally affecting the public interest for the purpose of applying
24      the consumer protection act, chapter 19.86 RCW. A violation of this
    section is not reasonable in relation to the development and preservation
25      of business and is an unfair or deceptive act in trade or commerce and

COMPLAINT - 8

1   an unfair method of competition for the purpose of applying the
2   consumer protection act, chapter 19.86 RCW.

3   33.   As a result of the passage of the Statute and Defendants' enforcement
4   thereof, Leda Health has been deprived of its First Amendment rights to free speech.

5   ## The Admissibility of Self-Collected Evidence

6   34.   The Statute fails to account for the fact that self-collected evidence is
7   broadly admissible, in Washington and elsewhere. The Washington Rules of Evidence
8   do not mandate a preference for police-collected evidence versus self-collected
9   evidence. So long as evidence meets the requirements for general admissibility, such
10  as relevance and authenticity, a court may admit it. *See* Wash. R. Evid. 401, 402, 802-
11  805, 901, 902.

12  35.   Self-collected evidence is not uncommon in criminal trials in
13  Washington and other States across the country.  In fact, it has been admitted in
14  criminal trials in a wide range of circumstances, including some where the chain of
15  custody was imperfect:

16      a.   In *State of Washington v. Alvarez*, 11 Wash. App. 2d 1005 (Wash. Ct.
17           App. Oct. 29, 2019), *as amended* (Jan. 23, 2020), underwear collected by
18           a survivor's mother from a laundry basket was admissible despite being
19           placed in a hamper with a towel that the defendant contended could
20           have contained his DNA.

21      b.   In *State of Washington v. Earl*, 182 Wash. App. 1021 (Wash. Ct. App.
22           July 14, 2014), a child victim's mother gave law enforcement two sets of
23           underwear that the child had been wearing "around [the] time" of the
24           sexual assault, and DNA results from one of the pairs was admitted into
25           evidence.

COMPLAINT - 9

**Corr Cronin llp**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1      c.  In *Thomas v. Commonwealth of Kentucky*, No. 2014-CA-000782-MR,

2          2016 WL 354318 (Ky. Ct. App. Jan. 29, 2016), a sexual assault victim

3          who cleaned herself with a washcloth was advised by her daughter to

4          "preserve the washcloth," which she did. *Id.* at *1. The washcloth was

5          later used to obtain DNA evidence matching the defendant's buccal

6          swab. *Id.*

7      d.  In *State of Wisconsin v. Heine*, 319 Wis. 2d 233 (Wis. Ct. App. Apr. 14,

8          2009), a deputy sheriff assigned to the infirmary of the county jail was

9          convicted of sexually assaulting an inmate. The inmate spit the

10         defendant's semen into her right hand and "shortly thereafter

11         transferred the semen to a medicine cup, which she covered with a

12         sanitary napkin pad wrapper and fastened with rubber bands." *Id.* at

13         *1. DNA testing revealed that the semen in the medicine cup contained

14         the defendant's DNA. *Id.* The appellate court found that the trial court

15         was free to reject the defendant's alternate theory for how the victim

16         collected the semen in the medicine cup and determined that the

17         evidence was sufficient to convict the defendant. *Id.* at *3.

18      e.  In 2011, the Kentucky Supreme Court held that a trial court was within

19         its "sound discretion" to allow the submission and testing of a

20         defendant's self-collected DNA sample. *Moore v. Com.*, 357 S.W.3d 480,

21         497 (Ky. 2011). In reaching this decision, the Kentucky Supreme Court

22         noted that "the trial court must manage the testing process" and was

23         "sufficiently cognizant of the risks of such self-collection to take steps to

24         minimize them." *Id.*

25

COMPLAINT - 10

**Corr Cronin llp**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

36.    The use of self-collected evidence is not limited only to criminal proceedings. It may be admitted in civil cases as well.[1]

37.    So, too, can self-collected evidence be admitted in federal court as long as it can be authenticated. Under the Federal Rules of Evidence, certain kinds of evidence are considered self-authenticating, meaning they require no extrinsic evidence of authenticity to be admitted.[2]

38.    Sexual assault testing kits administered by law enforcement or healthcare workers are not immune from authentication and chain of custody scrutiny. It must be established with sufficient completeness to make it improbable that the kit has been exchanged with another or contaminated or tampered with.[3]

39.    A State's collection of evidence using a traditional sexual assault kit also does not ensure that such evidence will be handled properly or that a conviction is certain. Often it is not.  But law enforcement is not required to inform sexual assault survivors that police-collected or hospital-collected evidence may not be admitted at trial. There are numerous instances in which police-collected or hospital-collected sexual assault evidence was not admitted at trial:

   a.   In *State v. Keen*, 14 Wash. App. 2d 1068 (Wash. Ct. App. Oct. 27, 2020), the appellate court affirmed the dismissal of a rape charge after a 9-year delay in prosecution prejudiced the defendant in finding and examining the nurse who performed a traditional sexual assault kit.

---

[1]    *See, e.g., Robinson v. Cameron*, No. CV2012124327, 2014 WL 7232205, at *3 (Ohio Ct. Com. Pl. Aug. 27, 2014) (declining to exclude expert testimony based on inspection and testing of samples self-collected by plaintiff from sump pump pit, where expert stated that a proper chain of custody of all samples was maintained).

[2]    *See United States v. Alvirez*, 831 F.3d 1115 (9th Cir. 2016).

[3]    *See People v. Schroedel*, 187 Misc. 2d 690, 692 (Co. Ct. 2001) ("[C]hain of custody or collection techniques speak to the weight of the evidence not the admissibility and is an issue for the jury to determine."); *People v. Dallas*, 119 A.D.3d 1362, 1364 (N.Y. App. Div. 2014) (requiring law enforcement to demonstrate "sufficient assurances of the identity and unchanged condition of" rape kit results).

COMPLAINT - 11

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

b. In *State v. Peebles*, 192 Wash. App. 1058 (Wash. Ct. App. Mar. 1, 2016), the trial court excluded police-collected DNA evidence obtained from a victim's shorts because the DNA test concluded that "the sample was not suitable for comparison purposes."

c. In *State v. Benson*, 90 Wash. App. 1014 (Wash. Ct. App. Apr. 6, 1998), the trial court correctly excluded drug test results for failure to run a certain test and refused to admit evidence of a second set of tests due to the State's lack of due diligence, resulting in dismissal.

40. Ultimately, as Leda Health repeatedly and transparently cautions on its User Portal (as described below), the admissibility of self-collected evidence, such as that from EEKs, will depend on the discretion of the court, the specific circumstances of each case, and applicable laws. It includes this advisory in its "Terms and Conditions."[4] It also makes this clear to customers reading about EEKs on the Leda Health website.[5] Leda Health even makes this same information available in its "FAQs" webpage.[6]

41. These disclaimers aside, provided that a chain of custody can be established with sufficient completeness, Washington law does not generally prohibit the introduction of self-collected evidence in court proceedings. *See, e.g.*, *State v. Roche*, 114 Wash. App. 424, 426, 59 P.3d 682 (Wash. 2002).

---

[4]    A true and correct collection of these images is being submitted as <u>Exhibit C</u> to this Complaint.
[5]    *Id*.
[6]    *Id*.

COMPLAINT - 12

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

## COUNT I

### U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
### FACIAL FIRST AMENDMENT CHALLENGE

42.     Leda Health re-alleges and incorporates by reference the allegations of each preceding paragraph as if fully set forth herein.

43.     "Above all else, the First Amendment means that government generally has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Barr v. Am. Ass'n of Polit. Consultants, Inc.*, 140 S.Ct. 2335, 2346 (2020) (cleaned up). The First Amendment prohibits the targeting of speech based on its communicative content unless the government proves that its regulation is narrowly tailored to serve compelling state interests. *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015). The government may not impose restrictions on speech that "effectively drive certain ideas or viewpoints from the marketplace." *R.A.V. v. City of St. Paul*, 505 U.S. 377, 387 (1992).

44.     Leda Health enjoys the First Amendment's protections against content-based restrictions on its speech. The First Amendment protects Leda  Health's commercial speech from unwarranted governmental regulation such as the Statute. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 557 (1980).

45.     The Statute's prohibition on representing that a sexual assault kit is "over-the-counter, at-home, or self-collected or in any manner that indicates that the sexual assault kit may be used for the collection of evidence of sexual assault other than by law enforcement or a health care provider" violates Leda Health's right to

COMPLAINT - 13

free speech. This prohibition impermissibly discriminates against speech based on its content and viewpoint.

46.     Additionally, the Statute's prohibition against selling, offering to sell, or otherwise providing sexual assault kits as described in subsections (2)(a) and (b) of the Statute violates Leda Health's right to free speech. This prohibition, too, impermissibly discriminates against speech based on the content thereof.

47.     The Statute targets speech that is both commercial and non-commercial. While speech selling or offering to sell sexual assault kits may be considered commercial, speech "otherwise providing" sexual assault kits, and speech describing the nature, purpose, or method of using sexual assault kits, is non-commercial.

48.     Regardless of whether speech is commercial or non-commercial, strict scrutiny applies to content-based regulations. Such regulations are presumptively unconstitutional.

49.     The Statute is an unconstitutional prior restraint on speech. Prior restraints on speech are    disfavored    and    carry    a    "heavy presumption" of invalidity. *Forsyth County v. Nationalist Movement*, 505 U.S. 123, 130 (1992). "This heavy presumption is justified by the fact that prior restraints on speech are the most serious and the least tolerable infringement on First Amendment rights." *Long Beach Area Peace Network v. City of Long Beach*, 574 F.3d 1011, 1021 (9th Cir. 2009) (internal quotes omitted).

50.     The Statute is content-based because, on its face, it draws distinctions based on the message a speaker conveys. The Statute is also viewpoint-based because, on its face, it draws distinctions based on the particular viewpoint a speaker conveys concerning the value of using EEKs.

COMPLAINT - 14

51.     The Statute is not narrowly tailored to serve a compelling state interest. Less restrictive means exist to address Washington's alleged interest in preventing "misleading" speech, such as the inclusion of additional written warnings or disclaimers with EEKs or directly regulating the admissibility of self-collected evidence in court.

52.     The Statute does not impose a merely incidental burden on speech. Instead, the Statute prohibits speech altogether.

53.     By enforcing the Statute, the Defendants, under color of law, deprive Leda Health of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Therefore, Leda Health is harmed in violation of 42 U.S.C. § 1983.

## COUNT II

### U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
### AS-APPLIED FIRST AMENDMENT CHALLENGE

54.     Leda Health re-alleges and incorporates by reference the allegations of each preceding paragraph as if fully set forth herein.

55.     Leda Health's public speech describing, offering, selling, marketing, or providing information about EEKs is protected by the Free Speech Clause of the First Amendment, which extends to the states by operation of the Fourteenth Amendment.

56.     The factual circumstances leading up to the enactment of the Statute, and the legislative history of the Statute, reflect that the Statute was enacted to intentionally and unfairly target Leda Health and its message.

57.     Without subjecting the issue to a trier of fact, Washington State's Legislature decided that Leda Health's messaging regarding EEKs is misleading. But the Legislature makes laws—it does not apply them. That is the court's function. No

COMPLAINT - 15

CORR CRONIN LLP
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

interested party, including the AGO, ever brought a lawsuit against Leda Health for an alleged violation of chapter 19.86 RCW, so the Legislature attempted to shoehorn the application of chapter 19.86 RCW against Leda Health through the Statute, punishing Leda Health without the provision or protection of judicial review. The Legislature overstepped its constitutional bounds in enacting the Statute, and Defendants overstep their constitutional bounds in enforcing the Statute against Leda Health.

58.     The marketing and various forms of speech in which Leda Health engages as part of its routine business practices are constitutionally protected speech that the Statute, as applied to this speech, operates to censor and ban.

59.     As applied to Leda Health, the Statute's prohibitions violate Leda Health's First Amendment right to free speech by impermissibly discriminating against Leda Health's commercial and non-commercial speech on the basis of its content and viewpoint.

60.     As applied to Leda Health, the Statute's prohibitions are not narrowly tailored to serve a compelling state interest.

61.     By enforcing the Statute, the Defendants, under color of law, deprive Leda Health of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Therefore, Leda Health is harmed in violation of 42 U.S.C. § 1983.

**COUNT III**

U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
**FIRST AMENDMENT VAGUENESS**

62.     Leda Health re-alleges and incorporates by reference the allegations of each paragraph as if fully set forth herein.

COMPLAINT - 16

63.     Because notice is the first element of due process, the Fourteenth Amendment's Due Process Clause prohibits the enforcement of vague laws. The First Amendment likewise forbids the enforcement of laws that are so vague as to chill protected speech. The Statute in this case is vague on its face and as applied.

64.     The Statute's prohibitions of speech that "otherwise makes available" sexual assault kits and speech that "in any manner . . . indicates that the sexual assault kit may be used for the collection of evidence of sexual assault other than by law enforcement or a health care provider" are each unduly vague, serving only to authorize Defendants' arbitrary censorship of speech they dislike. As a result of the Statute's vague language, Leda Health does not reasonably know what conduct is and is not prohibited.

65.     Additionally, the Statute's definition of "sexual assault kit" is unduly vague, further serving to authorize Defendants' arbitrary censorship of speech they dislike and leaving Leda Health uncertain of which of its products or services are unlawful.

66.     By enforcing these provisions of the Statute, the Defendants, under color of law, deprive Leda Health of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Therefore, Leda Health is harmed in violation of 42 U.S.C. § 1983.

## COUNT IV

U.S. CONST. AMENDS. I, XIV, 42 U.S.C. § 1983
### FIRST AMENDMENT OVERBREADTH

67.     Leda Health re-alleges and incorporates by reference the allegations of each paragraph as if fully set forth herein.

COMPLAINT - 17

68.     Because notice is the first element of due process, the Fourteenth Amendment's Due Process Clause prohibits the enforcement of overbroad laws. The First Amendment likewise forbids the enforcement of laws that are so overbroad as to chill protected speech and punish a substantial amount of protected free speech. The Statute in this case is overbroad on its face and as applied.

69.     The Statute's prohibitions of speech in subsection (2) are overbroad, serving only to authorize Defendants' punishment of a substantial amount of protected free speech.

70.     Additionally, the Statute's definition of "sexual assault kit" is overbroad, further serving to authorize Defendants' punishment of a substantial amount of protected free speech.

71.     By enforcing these provisions of the Statute, the Defendants, under color of law, deprive Leda Health of the right to free speech in violation of the First and Fourteenth Amendments to the United States Constitution. Therefore, Leda Health is harmed in violation of 42 U.S.C. § 1983.

## COUNT V

### U.S. CONST. ART. I § 9, CL. 3, 42 U.S.C. § 1983
### UNCONSTITUTIONAL BILL OF ATTAINDER

72.     Leda Health re-alleges and incorporates by reference the allegations of each paragraph as if fully set forth herein.

73.     The Statute is an unconstitutional bill of attainder. Article I of the U.S. Constitution prohibits Congress from passing any bill of attainder. U.S. Const. art. I § 9, cl. 3 ("No Bill of Attainder or ex post facto Law shall be passed."). Among the powers prohibited to the states were to "pass any Bill of Attainder." U.S. Const. art. I, § 10.

COMPLAINT - 18

74.     A bill of attainder is "legislative punishment, of any form or severity, of specifically designated persons or groups." *United States v. Brown*, 381 U.S. 437, 447 (1965). The protection against bills of attainder is "an implementation of the separation of powers, a general safeguard against legislative exercise of the judicial function, or more simply — trial by legislature." *Id.* at 442.

75.     Leda Health is the easily ascertainable target of the Statute.

76.     By singling out Leda Health for punishment, the Statute is an unconstitutional bill of attainder. The Statute's punishment is not merely burdensome consequences but punitive action. In doing so, the Statute imposes punishment without the provisions and protections of a judicial trial.

77.     The Statute inflicts "pains and penalties" that historically have been associated with bills of attainder. *See Nixon v. Adm'r of Gen. Servs.*, 433 U.S. 425, 474 (1977). Historically, common "pains and penalties" included "punitive confiscation of property by the sovereign" and "a legislative enactment barring designated individuals or groups from participation in specified employments or vocations," among others. *Id.* As described above, the Statute effectively bans Leda Health from conducting business in the State of Washington. *See supra* ¶¶ 38–49. For the same reason, the Statute bars Leda Health from operating in their chosen line of business.

78.     "[V]iewed in terms of the type and severity of burdens imposed" on Leda Health, the Statute's treatment of it cannot "reasonably . . . be said to further nonpunitive legislative purposes." *Nixon*, 433 U.S. at 475–76. The Statute transforms Leda Health into a "vilified class" by explicitly prohibiting their current and future operations in Washington, without qualification or limitation.

COMPLAINT - 19

**Corr Cronin llp**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

79.     There existed less drastic means to accomplish a legislative goal than banning Leda Health from conducting its business in the State of Washington.

80.     Defendants deprived Plaintiff of its constitutional right to not have a Bill of Attainder passed against it under color of state law in violation of 42 U.S.C. § 1983. Therefore, Leda Health is harmed in violation of 42 U.S.C. § 1983.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in its favor and against Defendants, and award the following relief:

A.     Declare that the Statute violates the First and Fourteenth Amendments of the United States Constitution, both on its face and as applied to Plaintiff;

B.     Declare that the Statute is an unconstitutional Bill of Attainder in violation of art. I, § 9, cl. 3 of the United States Constitution;

C.     Preliminarily and permanently enjoin Defendants, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of the injunction, from enforcing the Statute against Plaintiff;

D.     Issue an injunction that enjoins and restrains Defendants from enforcing the Statute in any manner that denies Plaintiff its constitutional right to free speech.

E.     Award Plaintiff its costs and reasonable attorneys' fees in this action pursuant to 42 U.S.C. §§ 1983 and 1988;

F.     Grant Plaintiff such other relief as this Court may deem just and proper.

COMPLAINT - 20

**CORR CRONIN LLP**
1015 Second Avenue, Floor 10
Seattle, Washington 98104-1001
Tel (206) 625-8600
Fax (206) 625-0900

1    DATED this 17th day of June, 2024.

2                                         CORR CRONIN LLP

3
                                          *s/ Jeffrey B. Coopersmith*
4                                         Jeffrey B. Coopersmith, WSBA No. 30954
                                          1015 Second Avenue, Floor 10
5                                         Seattle, Washington  98104-1001
                                          Ph: (206) 625-8600 | Fax: (206) 625-0900
6                                         jcoopersmith@corrcronin.com

7                                         LITSON PLLC

8                                         J. Alex Little (*pro hac vice* forthcoming)
                                          Zachary C. Lawson (*pro hac vice* forthcoming)
9                                         John R. Glover (*pro hac vice* forthcoming)
                                          6339 Charlotte Pike, Unit C321
10                                        Nashville, TN 37209
                                          Ph: 615-985-8205
11                                        alex@litson.co
                                          zack@litson.co
12                                        jr@litson.co

13                                        *Attorneys for Plaintiff*

14

15

16

17

18

19

20

21

22

23

24

25

COMPLAINT - 21