1

2

3

4

5

6

The Honorable David G. Estudillo

7

8

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**
**AT TACOMA**

9
LEDA HEALTH CORPORATION,
a Delaware Corporation,

10
                          Plaintiff,

11
        v.

12
JAY ROBERT INSLEE, in his official
capacity as Governor of Washington, and

13
ROBERT WATSON FERGUSON, in his
official capacity as Attorney General of

14
Washington,

15
                          Defendants.

16

NO. 2:24-cv-00871-DGE

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION

NOTE ON MOTION CALENDAR:
AUGUST 16, 2024 [1]

17

18

19

20

21

22

23

24

25

26

---

[1] Governor Inslee and Attorney General Ferguson intend to file a motion to dismiss on or before August 16, 2024, and respectfully request the Court consider that motion alongside Leda's preliminary injunction motion.

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND .................................................................................................. 2

    A.   Properly Administered Exams Support Survivors of
        Sexual Assault and Ensure the Preservation of Evidence ............................ 2

    B.   Washington's Attorney General Issued a Cease-and-Desist
        Letter to Leda Asserting its Sale and Marketing of
        "Early Evidence Kits" Had the Capacity to Deceive Survivors
        and Prejudice Sexual Assault Prosecutions ................................................. 4

    C.   The Legislature Adopted HB 1564 to Prevent Exploitation of
        Sexual Assault Survivors ............................................................................. 5

    D.   Leda Sues Washington and Other States ..................................................... 8

III.  LEGAL STANDARD ......................................................................................... 8

IV.  ARGUMENT ...................................................................................................... 9

    A.   Leda Is Unlikely to Succeed on the Merits of Its Claims .......................... 9

        1.   HB 1564 is consistent with the First Amendment ............................. 9

            a.   HB 1564 regulates only non-expressive conduct ...................... 9

            b.   To the extent HB 1564 regulates speech, it regulates
               commercial speech and satisfies *Central Hudson* scrutiny ..................... 13

        2.   HB 1564 is not vague ....................................................................... 16

        3.   HB 1564 is not overbroad ................................................................ 18

        4.   HB 1564 is not an unconstitutional bill of attainder ....................... 20

            a.   HB 1564 does not apply exclusively to Leda ........................... 20

            b.   HB 1564 does not inflict punishment on Leda
               without judicial review ............................................................. 22

    B.   Leda Cannot Show Irreparable Harm Absent an Injunction ...................... 23

    C.   The Balance of Equities and Public Interest in Protecting
        Investigations and Prosecutions of Sexual Assault Weigh
        Heavily Against Leda's Requested Injunction ........................................... 24

V.    CONCLUSION ................................................................................................. 25

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

i

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## TABLE OF AUTHORITIES

### Cases

*44 Liquormart, Inc. v. Rhode Island,*
    517 U.S. 484 (1996) .................................................................................. 10

*Abbott v. Perez,*
    585 U.S. 579 (2018) .................................................................................. 24

*Am. Acad. of Pain Mgmt. v. Joseph,*
    353 F.3d 1099 (9th Cir. 2004) ................................................................ 19

*B&L Prods., Inc. v. Newsom,*
    104 F.4th 108 (9th Cir. 2024) ................................................................... 9

*Barr v. Am. Ass'n of Pol. Consultants, Inc.,*
    591 U.S. 610 (2020) ........................................................................... 12, 13

*Bd. of Trs. of State Univ. of N.Y. v. Fox,*
    492 U.S. 469 (1989) ................................................................... 15, 16, 19

*Benisek v. Lamone,*
    585 U.S. 155, 158 (2018) (per curiam) .................................................. 23

*Bolger v. Youngs Drug Prods. Corp.,*
    463 U.S. 60 (1983) ................................................................................... 13

*Broadrick v. Oklahoma,*
    413 U.S. 601 (1973) .................................................................................. 19

*Cal. Tchrs. Ass'n v. State Bd. of Educ.,*
    271 F.3d 1141 (9th Cir. 2001) ................................................................ 17

*Central Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n,*
    447 U.S. 557 (1980) ........................................................................ passim

*Diaz v. Messer,*
    742 F. App'x 250 (9th Cir. 2018) (unpublished) .................................... 19

*Drakes Bay Oyster Co. v. Jewell,*
    747 F.3d 1073 (9th Cir. 2014) ................................................................ 24

*Eastchester Tobacco & Vape Inc. v. Town of Eastchester,*
    618 F. Supp. 3d 155 (S.D.N.Y. 2022) ..................................................... 9

*Edenfield v. Fane,*
    507 U.S. 761 (1993) .................................................................................. 13

*Fla. Bar v. Went For It, Inc.,*
    515 U.S. 618 (1995) .................................................................................. 15

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

ii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Fowler Packing Co. v. Lanier*,
    844 F.3d 809 (9th Cir. 2016) ............................................................................. 20

*Franceschi v. Yee*,
    887 F.3d 927 (9th Cir. 2018) ............................................................................. 21

*Greater Phila. Chamber of Com. v. City of Philadelphia*,
    949 F.3d 116 (3d Cir. 2020) .............................................................................. 14

*Gustafson v. Alloyd Co.*,
    513 U.S. 561 (1995) ........................................................................................... 17

*Heffner v. Murphy*,
    745 F.3d 56 (3d Cir. 2014) ................................................................................ 15

*Hettinga v. United States*,
    677 F.3d 471 (D.C. Cir. 2012) .......................................................................... 20

*Hill v. Colorado*,
    530 U.S. 703 (2000) ........................................................................................... 16

*Kashem v. Barr*,
    941 F.3d 358 (9th Cir. 2019) ............................................................................. 17

*L C & S, Inc. v. Warren Cnty. Area Plan Comm'n*,
    244 F.3d 601 (7th Cir. 2001) ............................................................................. 21

*Levi Strauss & Co. v. Shilon*,
    121 F.3d 1309 (9th Cir. 1997) ........................................................................... 11

*Maryland v. King*,
    567 U.S. 1301 (2012) ......................................................................................... 24

*Mitchell v. Atkins*,
    No. C19-5106-JCC, 2024 WL 755950 (W.D. Wash. Feb. 23, 2024) ................. 24

*Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence*,
    No. CA 12-96-ML, 2012 WL 6128707 (D.R.I. Dec. 10, 2012), *aff'd*,
    731 F.3d 71 (1st Cir. 2013) ............................................................................... 12

*Nicopure Labs, LLC v. Food & Drug Admin.*,
    944 F.3d 267 (D.C. Cir. 2019) ....................................................................... 9, 10

*Nordyke v. Santa Clara County*,
    110 F.3d 707 (9th Cir. 1997) ............................................................................. 11

*Oakland Trib., Inc. v. Chron. Pub. Co.*,
    762 F.2d 1374 (9th Cir. 1985) ........................................................................... 23

*Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*,
    413 U.S. 376 (1973) ........................................................................................... 14

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

iii

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

*Rubin v. Coors Brewing Co.*,
    514 U.S. 476 (1995) ............................................................................................. 15

*SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*,
    309 F.3d 662 (9th Cir. 2002) ......................................................................... 20, 22

*Sorrell v. IMS Health Inc.*,
    564 U.S. 552 (2011) .......................................................................................... 9, 12

*United States v. Hansen*,
    599 U.S. 762 (2023) ................................................................................................ 19

*United States v. Morrison*,
    529 U.S. 598 (2000) ................................................................................................ 15

*United States v. O'Brien*,
    391 U.S. 367 (1968) ................................................................................................ 10

*United States v. Williams*,
    553 U.S. 285 (2008) ................................................................................... 11, 18, 19

*Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*,
    425 U.S. 748 (1976) ................................................................................................ 10

*Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*,
    455 U.S. 489 (1982) ................................................................................... 16, 17, 18

*Wash. State Grange v. Wash. State Republican Party*,
    552 U.S. 442 (2008) .................................................................................................. 8

*Whitaker v. Thompson*,
    353 F.3d 947 (D.C. Cir. 2004) ............................................................................... 11

*Winter v. Nat. Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................................... 8, 23, 24

*Wreal, LLC v. Amazon.com, Inc.*,
    840 F.3d 1244 (11th Cir. 2016) ............................................................................. 23

*Yates v. United States*,
    574 U.S. 528 (2015) ................................................................................................ 17

*Yim v. City of Seattle*,
    63 F.4th 783 (9th Cir. 2023) ................................................................................... 13

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

iv

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

## Constitutional Provisions

U.S. Const. amend. I ................................................................................................ passim

U.S. Const. amend. XI ...................................................................................................... 9

U.S. Const., art. I, § 10, cl. 1 ......................................................................................... 20

## Statutes

2023 Wash. Sess. Laws, ch. 296, § 1 ......................................................... 7, 15, 22, 24

H.B. 1564, 68th Leg., Reg. Sess. (Wash. 2023) ....................................................... passim

Wash. Rev. Code § 5.70.070 ..................................................................................... 7, 20

Wash. Rev. Code § 5.70.070(2) ................................................................................ 7, 17

Wash. Rev. Code § 5.70.070(2)(a) ................................................................... 10, 11, 18

Wash. Rev. Code § 5.70.070(2)(b) ................................................................................ 18

Wash. Rev. Code § 5.70.070(3) ...................................................................................... 7

Consumer Protection Act,
   Wash. Rev. Code § 19.86 ..................................................................... 1, 7, 16, 23

Md. Code Ann. Com. Law § 14-4601 ............................................................................. 7

N.H. Rev. Stat. Ann. § 359-R:1 ...................................................................................... 7

## Other Authorities

6A *Wash. Prac., Wash. Pattern Jury Instr. Civ.* WPI 310.03L (7th ed.) .................................. 23

Brett Davis, *Legislation to ban OTC rape kits in Washington*
   *debated at Senate public hearing*, The Center Square (Mar. 9, 2023),
   https://www.thecentersquare.com/washington/article_b138a862-bec1-
   11ed-bd7b-8b4be3521146.html ................................................................................ 21

Hr'g Before H. Comm. on Cmty. Safety, Just., & Reentry (Wash. Feb. 7, 2023),
   *video recording by* TVW, Washington State's Public Affairs Network,
   https://tvw.org/video/house-community-safety-justice-reentry-
   2023021199/?eventID=2023021199 ............................................................ 5, 22, 23

Hr'g Before S. Comm. on L. & Just. (Wash. Mar. 8, 2023),
   *video recording by* TVW, Washington State's Public Affairs Network,
   https://tvw.org/video/senate-law-justice-2023031248/?eventID=2023031248 ...................... 5

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

v

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

National Institutes of Health, *HIV Prevention*,
    https://hivinfo.nih.gov/understanding-hiv/
2   fact-sheets/post-exposure-prophylaxis-pep ............................................................................ 3

3   *Scope of the Problem: Statistics*, RAINN,
    https://www.rainn.org/statistics/scope-problem ................................................... 2
4

Victoria Knight, *At-Home Rape Kits Now Off The Market*,
5   KFF Health News (Sept. 16, 2019),
    https://kffhealthnews.org/news/at-home-rape-kits-now-off-the-market/ ............................... 7

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

# I.    INTRODUCTION

Prosecutors, law enforcement officers, medical and forensic professionals, and survivor advocates overwhelmingly agree that over-the-counter sexual assault kits are not competent and admissible evidence in criminal prosecutions, prejudice the prosecutions of sexual offenders, divert survivors from timely medical treatment, and mislead survivors, exposing them to further trauma. Washington's Legislature therefore enacted House Bill 1564, which makes the sale and distribution of over-the-counter sexual assault kits a per se violation of the state's Consumer Protection Act. Leda Health Corporation, a seller of self-collection kits, seeks the extraordinary equitable remedy of a preliminary injunction against HB 1564 in its entirety. Leda has not established any element required for such sweeping relief.

On the merits, HB 1564 does not implicate speech. It regulates conduct by prohibiting a person from selling, offering for sale, or otherwise making available over-the-counter sexual assault kits. Courts routinely agree that laws like this one, banning the sale of harmful products—from tobacco to unapproved medications—do not limit speech. Leda's First Amendment challenge fundamentally mischaracterizes HB 1564 as banning marketing or speech about over-the-counter sexual assault kits. It does not.

But even if HB 1564 did restrict some speech, it would at most restrict *commercial speech*, thus triggering *Central Hudson* scrutiny. HB 1564 passes such scrutiny at the decisive threshold step, because it (at most) concerns speech that is misleading and harmful to survivors of sexual assault. HB 1564 also satisfies the other prongs of *Central Hudson*, because it directly advances the government's substantial interest in protecting sexual assault survivors from do-it-yourself kits that can harm successful investigations and prosecutions of sexual assault and discourage survivors from obtaining timely medical treatment.

HB 1564 likewise is not overbroad or vague. It is reasonably clear that the law prohibits people from selling, offering to sell, or making available self-collection sexual assault kits.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO. 2:24-CV-00871-DGE

1

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Nor is HB 1564 an unconstitutional bill of attainder. The law extends beyond Leda, applies to prospective conduct, and furthers the non-punitive purposes of protecting survivors of sexual assault and promoting successful investigations and prosecutions of sexual offenses.

Finally, Leda cannot show irreparable harm or that the balance of equities supports injunctive relief. Leda's nearly year-long delay in bringing its motion eviscerates any assertion that it urgently needs equitable relief. And Washington has a significant interest in protecting survivors of sexual assault from deception, ensuring survivors receive timely treatment, and holding perpetrators accountable through the careful collection of evidence.

In sum, Leda has failed to meet its burden to justify the extraordinary remedy of preliminary relief. This Court should deny Leda's motion.

## II.    BACKGROUND

### A.    Properly Administered Exams Support Survivors of Sexual Assault and Ensure the Preservation of Evidence

At least one out of every six American women and one out of every thirty-three American men will survive an attempted or completed rape in their lifetimes.[2] Properly treating and gathering evidence from this vulnerable patient group without inflicting further trauma requires specialized training. Simpson Decl. ¶¶4–5, 8.

Sexual Assault Nurse Examiners (SANEs) are trained to provide trauma-informed, patient-centered forensic medical exams. *Id.*; Mukhopadhyay Decl. ¶7. Examinations by SANEs improve survivors' treatment for injuries and sexually transmitted diseases, increase reporting to law enforcement, and improve engagement with follow-up treatment and community support services. *See* Simpson Decl. ¶9. SANE-administered exams are also free in Washington and protected by the Health Insurance Portability and Accountability Act (HIPAA). *Id.* ¶¶8, 19, 29. SANEs place the highest priority in an exam on the well-being of the patient. *Id.* ¶8. Subject to patient consent, the examination will generally include collection of bodily fluids, hair samples,

---

[2] *Scope of the Problem: Statistics*, RAINN, https://www.rainn.org/statistics/scope-problem.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

2

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

and clothing. *Id.* ¶¶14–19. It will also include preparing a body "map" and injury log; locating, documenting, and photographing the patient's injuries; and documenting the patient's statements and demeanor. *See id.*, ¶¶12–13. SANEs are trained to ensure proper collection of evidence, packaging, and chain of custody so that the evidence will be admissible at trial. *Id.* ¶¶13, 33; Tunheim Decl. ¶¶7–8; Robnett Decl. ¶¶5–7. SANEs also receive training for testifying in court. Simpson Decl. ¶25; Tunheim Decl. ¶¶7–8; Robnett Decl. ¶9.

In addition to the forensic exam, SANEs will administer prophylactic treatment for sexually transmitted infections, including HIV. Simpson Decl. ¶20.[3] Survivors are also offered pregnancy prevention treatment in appropriate cases and information about necessary follow-up care. *Id.* ¶¶20–21.

SANEs typically work with social workers, community sexual assault advocacy organizations, and other crisis services to provide emotional and community support to patients. *See id.* ¶21; Mukhopadhyay Decl. ¶8. SANEs also assess for risk of suicide and help survivors develop a safety plan to mitigate the risk of future violence. *See* Simpson Decl. ¶¶11, 21; Mukhopadhyay Decl. ¶8.

SANEs provide adult patients with the option of reporting any assault to law enforcement officials, but do not require engaging with law enforcement. Simpson Decl. ¶22; McMahan Decl. ¶14. If the assault is reported, the results of any DNA collected by the SANE can be uploaded to the Combined DNA Index System (CODIS), a program that operates local, state, and national databases of DNA profiles from convicted offenders, unsolved crime scene evidence, and missing persons. Sass Decl. ¶¶7–8; Robnett Decl. ¶¶12–15; Tunheim Decl. ¶11. CODIS is a critical tool for identifying repeat offenders. Sass Decl. ¶20; Twitchell Decl. ¶¶11–14; Robnett Decl. ¶¶12–15; Tunheim Decl. ¶11. For example, Washington has eliminated a backlog of over 9,000 untested sexual assault kits, resulting in over 2,300 matches on CODIS in which the

---

[3] Recent studies have shown that treatment with a course of antiretroviral therapy within 72 hours of HIV-exposure decreases the risk of transmission by approximately 80%. *See* National Institutes of Health, *HIV Prevention*, https://hivinfo.nih.gov/understanding-hiv/fact-sheets/post-exposure-prophylaxis-pep.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

3

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  perpetrator was matched to a specific individual or case previously added to CODIS. Twitchell

2  Decl. ¶¶10–11. These hits have helped solve at least 21 sexual assault cases, a number likely to

3  grow over time. *Id.* ¶11.

4  **B.    Washington's Attorney General Issued a Cease-and-Desist Letter to Leda Asserting**
       **its Sale and Marketing of "Early Evidence Kits" Had the Capacity to Deceive**
5      **Survivors and Prejudice Sexual Assault Prosecutions**

6          Leda sells and distributes "Early Evidence Kits" (EEKs), described as a self-collection

7  sexual assault kit so survivors can self-administer DNA collection. *See* Dkt. #1 ¶12, Dkt. #11

8  ¶¶14, 22. The EEK is an evolution of a product Leda—then doing business as MeToo Kits

9  Company—previously marketed as "MeToo Kits." States across the country issued cease-and-

10  desist letters to, or consumer warnings about, MeToo Kits Company in 2019 regarding their DIY

11  sexual assault kit. *See* Wolf Decl., Exs. H–Q (letters and consumer warnings from state attorneys

12  general of New York, Oklahoma, Connecticut, Michigan, North Carolina, Hawaiʻi, and Florida).

13          In October 2022, upon discovering Leda's efforts to market and distribute the latest

14  version of its EEKs to college students at the University of Washington, the Consumer Protection

15  Division of the Washington State Attorney General's Office (AGO) issued a cease-and-desist

16  letter, directing Leda to "immediately cease and desist from advertising, marketing, and sales to

17  Washington consumers related to its 'Early Evidence Kits' on the basis that Leda's business

18  practices related to these kits violate the Washington Consumer Protection Act, ch. 19.86 RCW

19  ('CPA')." *Id.*, Ex. G. The cease-and-desist letter outlined "the unfair and deceptive nature of

20  Leda's 'Early Evidence Kits' and related advertising and marketing schemes, the bulk of which

21  have the capacity to deceive Washington consumers in violation of the CPA." *Id.* Leda ultimately

22  complied with the cease-and-desist letter and, among other things, removed all EEKs from

23  Washington. *See* Dkt. #1 ¶24; Dkt. #11 ¶22.

24          In 2024, Pennsylvania also issued a cease-and-desist letter to Leda related to their sale of

25  EEKs. Wolf Decl., Ex. S. Pennsylvania has since filed a consumer protection action against Leda

26  for its marketing and sale of its EEKs. *See id.*, Ex. T.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

4

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

**C.    The Legislature Adopted HB 1564 to Prevent Exploitation of Sexual Assault Survivors**

At the request of advocacy groups and consumers, in early 2023, the Legislature considered HB 1564, 68th Leg., Reg. Sess. (Wash. 2023) to prohibit the sale of at-home sexual assault evidence kits. The Legislature held multiple days of public hearings, in which testimony strongly supported the bill. The Legislature received extensive testimony from law enforcement, prosecutors, survivor advocates, hospital representatives, university students, nurses' associations, and women's groups, detailing how at-home "evidence" kits deceive and exploit sexual assault survivors, prejudice the prosecution of sexual assault crimes, and subject survivors to further trauma. Wolf Decl., Exs. C, D.[4]

Law enforcement and prosecutors testified that sexual assault cases are already difficult to prosecute, and at-home sexual assault kits make the cases even harder because prosecutors cannot admit at-home kits into evidence nor rely on the important corroborative evidence that would be provided by a SANE. *Id.* While testing conducted and preserved by SANEs and law enforcement officers are regularly admitted into evidence, testing from at-home kits has never been successfully admitted into evidence in Washington. *Id.* With at-home kits, neither the witness who self-collects nor the individual who processes the results can establish an unbroken chain of custody as required to establish that test results are authentic and reliable. *Id.* Without testimony from the person who conducted the test to establish the authenticity and reliability of test results, and who can be subject to cross-examination, courts will not admit test results into evidence. *Id.* At-home kits thus substantially prejudice successful prosecution of sexual assaults.

Even if prosecutors could overcome these barriers, survivors would be required to testify about the chain of custody, storage, and possible cross-contamination of the evidence. *Id.* This

---

[4] Hr'g Before H. Comm. on Cmty. Safety, Just., & Reentry (Wash. Feb. 7, 2023), at 1:18:40, *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/house-community-safety-justice-reentry-2023021199/?eventID=2023021199; Hr'g Before S. Comm. on L. & Just. (Wash. Mar. 8, 2023), at 22:58, *video recording by* TVW, Washington State's Public Affairs Network, https://tvw.org/video/senate-law-justice-2023031248/?eventID=2023031248.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO. 2:24-CV-00871-DGE

5

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

opens up additional lines of attack and risks retraumatizing survivors. And survivors who choose an at-home kit over a SANE-administered exam forego other valuable benefits. *Id.* One of a SANE's most important roles in a trial is to corroborate a victim's injuries, demeanor, and statements, which can generally be admitted as evidence as statements supporting a medical diagnosis. *Id.*

The Legislature heard from medical professionals who explained that an at-home kit also cannot provide essential treatment for injuries, prophylactic treatment for sexually transmitted infections, or pregnancy prevention treatment. *Id.* Where an individual has experienced strangulation, this missed treatment opportunity can be deadly. Survivors will also lose important support services, including an opportunity to connect with a rape crisis counselor, and information about follow-up care. *Id.* And because at-home kits are not medical treatment, the information collected from an at-home kit is not subject to HIPAA protections. *Id.*

Numerous witnesses also testified about the likelihood that at-home kits will deceive and retraumatize sexual violence survivors. The kits push a false narrative that SANE-administered exams are traumatizing and costly and require reporting to law enforcement. *Id.* Law enforcement representatives also testified about the larger public safety concerns with at-home kits because any test results cannot be entered into the national DNA database, CODIS. *Id.* Because many offenders are repeat or serial predators, this can expose even more individuals to sexual violence. *Id.*

Several Leda executives also testified at public hearings, primarily urging lawmakers to slow the bill down. When asked whether any at-home kit had been successfully admitted as evidence in a criminal trial, Leda executives failed to identify any cases. *Id.*

During the hearings, legislators questioned the need for the bill given the AGO's cease-and-desist order to Leda. Supporters informed legislators that additional companies were considering at-home evidence kits. For example, a second company, the Preserve Group, had

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

6

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  also previously offered at-home rape kits that were subject to cease-and-desists by New York

2  and Oklahoma.[5]

3      The Legislature overwhelmingly passed HB 1564 on a bipartisan basis. The law (codified

4  at Wash. Rev. Code § 5.70.070) went into effect on July 23, 2023.[6] The Legislature found that

5  "[t]horough and professional investigations, including preservation of forensic evidence, are

6  imperative and a fundamental component" of supporting survivors by "building victim-centered,

7  trauma-informed systems that promote successful investigations and prosecutions of sexual

8  offenses." 2023 Wash. Sess. Laws, ch. 296, § 1. The Legislature explained the harms of at-home

9  sexual assault test kits, including concerns about prejudicing the successful investigations and

10  prosecutions of offenders, and that the sale of over-the-counter sexual assault kits "may prevent

11  survivors from receiving accurate information about their options and reporting processes; from

12  obtaining access to appropriate and timely medical treatment and follow up; and from connecting

13  to their community and other vital resources." *Id.*

14      HB 1564 prohibits a person, as defined, from selling, offering for sale, or otherwise

15  making available a sexual assault kit:

16      (a) That is marketed or otherwise presented as over-the-counter, at-home, or self-
        collected or in any manner that indicates that the sexual assault kit may be used
17      for the collection of evidence of sexual assault other than by law enforcement or
        a health care provider; or
18

19      (b) If the person intends, knows, or reasonably should know that the sexual assault
        kit will be used for the collection of evidence of sexual assault other than by law
20      enforcement or a health care provider.

21  Wash. Rev. Code § 5.70.070(2). The practices covered by the statute are "an unfair or deceptive

22  act in trade or commerce and an unfair method of competition for the purpose of applying" the

23  Consumer Protection Act (CPA). Wash. Rev. Code § 5.70.070(3).

24  _____

25      [5] Victoria Knight, *At-Home Rape Kits Now Off The Market*, KFF Health News (Sept. 16, 2019),
    https://kffhealthnews.org/news/at-home-rape-kits-now-off-the-market/; Wolf Decl., Exs. I, K.

26      [6] Washington is not alone in legislating in this area. In 2020, New Hampshire enacted N.H. Rev. Stat. Ann.
    § 359-R:1, which prohibits the sale or offer for sale of over-the-counter rape test kits. And earlier this year, Maryland
    enacted a similar law. Md. Code Ann. Com. Law § 14-4601.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

7

1    In addition to passing HB 1564, the State has also significantly reformed the process for

2    testing sexual assault kits over the last decade. It passed new laws requiring kits to be tested

3    within set timeframes and allowing survivors to track the progress of such testing online.

4    Twitchell Decl. ¶¶19–20; McMahan Decl. ¶¶6–7; Mukhopadhyay Decl. ¶10. The State has

5    dedicated significant resources to eliminating the State's backlog on testing sexual assault kits

6    and expanding training and capacity of SANE nurses. Twitchell Decl. ¶¶4–10, 25. The State has

7    no backlog problem on testing of sexual assault kits and examinations by SANE nurses are free

8    and available statewide. *Id.* ¶10, 25; Simpson Decl. ¶29.

9    **D.    Leda Sues Washington and Other States**

10    Eleven months after HB 1564 took effect, Leda filed its complaint and motion for

11    preliminary injunction. Leda has also sued the attorneys general of New York and Pennsylvania

12    for cease-and-desists issued to Leda by their offices. Wolf Decl., Exs. U, V.

13    **III.    LEGAL STANDARD**

14    A preliminary injunction is an "extraordinary remedy never awarded as of right." *Winter*

15    *v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). Leda must make a "clear showing" that

16    (1) it is likely to succeed on the merits, (2) it is likely to suffer irreparable harm in the absence

17    of preliminary relief, (3) the balance of equities tips in its favor, and (4) an injunction is in the

18    public interest. *Id.* at 20, 22. "Facial challenges are disfavored[.]" *Wash. State Grange v. Wash.*

19    *State Republican Party*, 552 U.S. 442, 450 (2008).

20

21

22

23

24

25

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

8

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1

## IV.   ARGUMENT

2

**A.   Leda Is Unlikely to Succeed on the Merits of Its Claims** [7]

3

### 1.   HB 1564 is consistent with the First Amendment

4

#### a.   HB 1564 regulates only non-expressive conduct

5      The First Amendment prohibits the government from "abridging the freedom of speech."

6   U.S. Const. amend. I. Leda "bears the burden 'to demonstrate that the First Amendment even

7   applies.'" *B&L Prods., Inc. v. Newsom*, 104 F.4th 108, 112 (9th Cir. 2024). This Leda cannot

8   do, because HB 1564 regulates non-expressive conduct—the conduct of selling, offering for

9   sale, or making available DIY sexual assault kits—which does not implicate the First

10  Amendment. As the Supreme Court has made clear, "restrictions on protected expression are

11  distinct from restrictions on economic activity or, more generally, on nonexpressive conduct."

12  *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 567 (2011). And it is well established that "the First

13  Amendment does not prevent restrictions directed at commerce or conduct from imposing

14  incidental burdens on speech." *Id.* at 567.

15      Here, HB 1564's prohibition on the sale and distribution of DIY sexual assault kits is a

16  restriction on commerce and conduct—not a restriction on speech. *See B&L Prods.*, 104 F.4th

17  at 114–15 (statutes prohibiting contracting for sale of firearms or ammunition on state property

18  did not implicate First Amendment); *Nicopure Labs, LLC v. Food & Drug Admin.*, 944 F.3d

19  267, 290–93 (D.C. Cir. 2019) (ban on free samples of tobacco products did not violate right to

20  freedom of expression); *Eastchester Tobacco & Vape Inc. v. Town of Eastchester*, 618 F. Supp.

21  3d 155, 161–62 (S.D.N.Y. 2022) (dismissing First Amendment challenge to ordinance banning

22  "[t]he sale, offer for sale, or distribution of Electronic Nicotine Delivery Products").

23      Leda's First Amendment claims are based on a fundamental misunderstanding of

24  HB 1564. Leda asserts HB 1564 "does not ban the sale of EEKs[,]" Dkt. #10 at 9, but that is

25

26      _____

   [7] As detailed in the forthcoming motion to dismiss, the Eleventh Amendment bars Leda's claims against
   Governor Inslee, who does not have a direct enforcement connection to HB 1564.

---

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

9

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    precisely what HB 1564 does. Under the law, "[a] person may not sell, offer for sale, or otherwise

2    make available a sexual assault kit" that is "marketed or otherwise presented as over-the-counter,

3    at-home, or self-collected . . . ." Wash. Rev. Code § 5.70.070(2)(a). HB 1564 does not regulate

4    commercial speech by, for example, prohibiting plaintiffs from advertising accurate information

5    about lawfully sold products. *See 44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 489 (1996)

6    (prohibition on advertising prices of legal alcoholic beverages violates the First Amendment);

7    *Va. State Bd. of Pharmacy v. Va. Citizens Consumer Council, Inc.*, 425 U.S. 748, 750 (1976)

8    (same for prohibition on pharmacists advertising truthful information about legally prescribed

9    prescription drugs). HB 1564 only regulates what people and businesses "must *do*[,] . . . not

10   what they may or may not *say*." *Rumsfeld v. F. for Acad. & Institutional Rts., Inc.*, 547 U.S. 47,

11   60 (2006).

12          Contrary to Leda's claims, nothing in HB 1564 stops Leda from just telling people that

13   they can self-collect evidence. Dkt. #10 at 2. Nor does HB 1564 prohibit Leda from simply

14   promoting the supposed benefits of EEKs or instructing people on how to use EEKs. HB 1564

15   does not bar a Leda employee from answering questions from people about EEKs or "just even

16   discussing EEKs with survivors trying to use one" either. *Id.* at 16 (emphasis removed). These

17   actions taken alone would not violate HB 1564 because Leda would not be selling, offering for

18   sale, or otherwise making available an over-the-counter sexual assault kit. The law instead

19   restricts the sale and distribution of DIY sexual assault kits—which "affects access to products"

20   and is not a speech restriction "subject to First Amendment scrutiny." *Nicopure*, 944 F.3d at 291.

21   Were it otherwise, First Amendment protections would extend to every commercial transaction

22   on the ground that the transaction communicates information about a product or service. But

23   courts have long rejected the "view that an apparently limitless variety of conduct can be labeled

24   'speech' whenever the person engaging in the conduct intends thereby to express an idea."

25   *United States v. O'Brien*, 391 U.S. 367, 376 (1968).

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

10

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Prohibiting an "offer for sale" of an unlawful over-the-counter sexual assault kit likewise does not implicate the First Amendment. "Offers to engage in illegal transactions are categorically excluded from First Amendment protection." *United States v. Williams*, 553 U.S. 285, 297 (2008); *see also Levi Strauss & Co. v. Shilon*, 121 F.3d 1309, 1312 (9th Cir. 1997) ("For commercial speech to come within the protection of the First Amendment, it must concern lawful activity."). This is why, for example, an offer to sell heroin is not protected speech. *Nordyke v. Santa Clara County*, 110 F.3d 707 (9th Cir. 1997), illustrates this point. There, the Ninth Circuit explained that "proposals to engage in commercial transactions are not accorded First Amendment protection" where the underlying transaction is illegal. *Id.* at 710. In *Nordyke*, because neither state nor federal law proscribed the sale of firearms at a gunshow, prohibiting an offer of "lawful activity" implicated *Central Hudson*'s commercial speech test. *Id.* at 711. But here, selling DIY sexual assault kits is illegal under state law. Proscribing the offer to sell this illegal product does not implicate the First Amendment. *Id.* at 710.

Leda also wrongly argues that HB 1564 is an outright marketing ban. Leda mistakenly focuses on the statute's prohibition on the sale or distribution of a sexual assault kit that is "marketed" "or otherwise presented" as over-the-counter, at-home, or self-collected. Dkt. #10 at 12–16. The statute, however, uses the terms "marketed" and "presented" to modify "sexual assault kit" to identify the illegal product by its intended use. In other words, the purpose of using sexual assault kits "over-the-counter," "at-home," or "self-collected," is what renders the sale of the product unlawful. Wash. Rev. Code § 5.70.070(2)(a).[8] But determining whether the sale of a product is unlawful based on the marketing or statements of a company is not a speech restriction. *See Whitaker v. Thompson*, 353 F.3d 947, 953 (D.C. Cir. 2004) (constitutionally permissible for the FDA to use labeling to infer intent for proposed sale of saw palmetto extract,

---

[8] That subsection (a) refers to the intended use of the product is further supported by subsection (b) of the statute, which prohibits a person from selling, offering for sale, or otherwise making available a sexual assault kit if that person "intends, knows, or reasonably should know that the sexual assault kit will be used for the collection of evidence of sexual assault other than by law enforcement or a health care provider." Wash. Rev. Code § 5.70.070.

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION NO. 2:24-CV-00871-DGE

11

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    which would constitute the forbidden sale of an unapproved drug); *Nat'l Ass'n of Tobacco*

2    *Outlets, Inc. v. City of Providence*, No. CA 12-96-ML, 2012 WL 6128707, at *8 (D.R.I. Dec.

3    10, 2012), *aff'd*, 731 F.3d 71 (1st Cir. 2013) (including public claim of manufacturer to

4    determine whether the described product falls under the definition of the proscribed product

5    "does not amount to a prohibition against speech"). It is still the sale of the product that is

6    proscribed, as well as the offer to sell an illegal product.

7            In arguing that HB 1564 targets protected speech, Leda relies on *Sorrell v. IMS Health*

8    *Inc.*, but the case has little relevance here. In *Sorrell*, Vermont enacted a statute that forbade the

9    sale of information about the prescribing practices of individual doctors for marketing purposes.

10   The state allowed the same information to be sold to other users, for example, for "educational

11   communications," thus favoring academic research over marketing. 564 U.S. at 564. The

12   Supreme Court held that the statute impermissibly imposed content-based and speaker-based

13   restrictions on the availability and use of prescriber-identifying information. In *Sorrell*, however,

14   the underlying product was itself speech. The Court thus rejected an argument that Vermont's

15   law regulated only conduct because "creation and dissemination of information"—i.e.,

16   information about doctors' prescribing practices—"are speech within the meaning of the First

17   Amendment." *Id.* at 570. Vermont's restrictions on how such information could be used or

18   disseminated thus implicated First Amendment protections. Here, in contrast, HB 1564 regulates

19   the sale of a product, not the sale of information. *Sorrell* is inapposite.

20           For similar reasons, Leda's reliance on *Barr v. American Ass'n of Political Consultants,*

21   *Inc.*, 591 U.S. 610 (2020), is unavailing. There, the Supreme Court struck down an amendment

22   to a federal law which generally prohibits robocalls, to allow robocalls made to collect debts

23   owed to the federal government. *Id.* at 613–14. The Court concluded that the amendment

24   unconstitutionally favored debt-collection speech over other speech (like political speech) and

25   severed the exception. *Id.* at 614. There was no debate as to whether the robocalls were speech

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

12

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    at all. Instead, the question was whether the government-debt exception was content-based. The

2    Court concluded it was. *Id.* at 618.

3        HB 1564 targets conduct, not speech.

4        **b.    To the extent HB 1564 regulates speech, it regulates commercial speech and satisfies *Central Hudson* scrutiny**

5

6        If, however, this Court concludes that the prohibition on selling, offering to sell, or

7    making available DIY sexual assault kits implicates speech, HB 1564 readily meets the test

8    articulated in *Central Hudson Gas & Electric Corp. v. Public Service Commission*, 447 U.S. 557

9    (1980), for restrictions on commercial speech. Commercial speech is "expression related solely

10   to the economic interests of the speaker and its audience." *Id.* at 561. Because such speech "is

11   'linked inextricably' with the commercial arrangement that it proposes," the State's interest in

12   regulating the transaction gives it "a concomitant interest in the expression itself[,]" and

13   commercial speech restrictions are thus subject only to an "intermediate standard of review[.]"

14   *Edenfield v. Fane*, 507 U.S. 761, 767 (1993). And commercial speech is still commercial speech

15   even if it "contain[s] discussions of important public issues." *Bolger v. Youngs Drug Prods.*

16   *Corp.*, 463 U.S. 60, 67–68 (1983) (contraceptive advertisements were commercial speech, even

17   though they discussed public-health issues).

18       As an initial matter, the applicable analysis is the four-prong commercial speech test set

19   forth in *Central Hudson*. Leda's assertion that strict scrutiny applies because HB 1564 is content-

20   based is "refuted by [Ninth Circuit] precedent, which holds that content-based restrictions of

21   commercial speech are subject to intermediate scrutiny[.]" *Yim v. City of Seattle*, 63 F.4th 783,

22   793 n.14 (9th Cir. 2023). The *Central Hudson* test first asks whether the regulated speech

23   concerns unlawful activity and is misleading. If so, First Amendment protections do not apply.

24   *Central Hudson*, 447 U.S. at 563–64 ("[t]he government may ban forms of communication more

25   likely to deceive the public than to inform it" or "commercial speech related to illegal activity").

26   If the regulated speech concerns lawful activity and is not misleading, the Court then examines

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

13

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    whether (2) the asserted governmental interest is substantial, and (3) the regulation directly

2    advances the governmental interest, and (4) the regulation is more extensive than necessary to

3    serve the government's stated interest. *Id.* at 564–66.

4    Leda's challenge fails at the threshold *Central Hudson* prong. As discussed above, *supra*

5    p. 11, speech about the sale of over-the-counter sexual assault kits is not protected because the

6    act of selling over-the-counter sexual assault kits is now proscribed by state law. Because Leda's

7    speech concerns unlawful activity, "it is not subject to First Amendment protection at all and

8    [the court's] inquiry ends." *Greater Phila. Chamber of Com. v. City of Philadelphia*, 949 F.3d

9    116, 140 (3d Cir. 2020); *see Pittsburgh Press Co. v. Pittsburgh Comm'n on Hum. Rels.*, 413 U.S.

10   376, 388 (1973) (no First Amendment right to publish a discriminatory employment

11   advertisement).

12   Even if Leda's "speech" did not propose an illegal transaction, it would also be

13   unprotected because it is misleading. Leda calls its self-collection sexual assault kits "Early

14   Evidence Kits," creating the impression that its kits would be admissible as evidence. But there

15   is no confirmation that any such kit has ever been accepted as evidence in Washington, and those

16   with deep experience with criminal investigations and prosecutions have identified significant

17   obstacles preventing such kits from being admitted into evidence in a sexual assault criminal

18   trial. *See supra* pp. 5–6; *see also* Tunheim Decl. ¶12; Robnett Decl. ¶8; Twitchell Decl. ¶15.

19   These obstacles include a DIY kit's and its results' reliability and authenticity, based on how the

20   kit was collected, packaged, stored, and how the chain of custody was maintained. *Id.* Moreover,

21   Leda's self-administered product is far more limited than sexual assault exams administered by

22   SANEs—who are specifically trained to collect forensic evidence, hair, and trace debris;

23   document observations of injuries and statements by the survivors; and treat survivors. *Compare*

24   Dkt. #11 ¶14 (describing EEK's contents), *with* Simpson Decl. ¶¶9–24 (elaborating on the

25   protocol and collection).

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

14

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    Though this Court need not reach the remaining three prongs of the *Central Hudson* test,

2    HB 1564 easily satisfies them. Washington—like the other states that have passed comparable

3    laws, *see supra* note 6—has a substantial interest in protecting sexual assault survivors and the

4    public, advancing a criminal justice system that results in successful investigations and

5    prosecutions of crimes, and ensuring survivors receive access to appropriate and timely medical

6    treatment and follow-up, as well as other community resources. 2023 Wash. Sess. Laws, ch. 296,

7    § 1; *see United States v. Morrison*, 529 U.S. 598, 618 (2000) ("[W]e can think of no better

8    example of the police power, . . . than the suppression of violent crime and vindication of its

9    victims."); *Heffner v. Murphy*, 745 F.3d 56, 92 (3d Cir. 2014) (state's "articulated interest in

10   consumer protection is undoubtedly substantial").

11   Under the third *Central Hudson* prong, HB 1564 "directly and materially advances" that

12   interest, which requires that the asserted harms are real and the regulation will "alleviate them to

13   a material degree." *Fla. Bar v. Went For It, Inc.*, 515 U.S. 618, 626 (1995) (cleaned up).

14   Prohibiting the sale and distribution of over-the-counter sexual assault kits eliminates the grave

15   risk that survivors will be misled into using kits that are later declared inadmissible in cases

16   trying to bring their assailants to justice. *Cf. Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487

17   (1995) ("common sense" that "restriction on the advertising of a product characteristic will

18   decrease the extent to which consumers select a product on the basis of that trait[]"). It also

19   prevents diversion of sexual assault survivors from seeking exams by trained and certified

20   SANEs, thus improving their access to care and providing greater assurances that the exam and

21   the forensic evidence collected can be successfully used in the criminal justice process. *See*

22   Robnett Decl. ¶11; Satake Decl. ¶20.

23   Under *Central Hudson*'s final prong, HB 1564 is not "more extensive than reasonably

24   necessary" in light of the State's interests. *Bd. of Trs. of State Univ. of N.Y. v. Fox*, 492 U.S. 469,

25   477 (1989) (quoting *In re R.M.J.*, 455 U.S. 191, 207 (1982)). Commercial speech restrictions

26   need not be the "least restrictive means" to achieve the desired end. *Id.* Instead, the State need

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

15

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    only achieve a "reasonable" fit between means and ends, with a scope that is "in proportion to

2    the interest served," and courts are "loath to second-guess" legislative judgment in this area. *Id.*

3    at 478, 480 (quoting *In re R.M.J.*, 455 U.S. at 203). HB 1564 does not ban protected speech, but

4    instead, prohibits the sale and distribution of DIY sexual assault kits by making those acts per se

5    violations of the Washington Consumer Protection Act. *See supra* p. 4; *see also* Wolf Decl.,

6    Exs. H–T (reflecting similar application of consumer protection statutes by other state attorneys

7    general). The only argument Leda makes on this point, again, mischaracterizes HB 1564 as

8    banning the marketing of EEKs. Leda proposes the Legislature should have instead "tried to ban

9    their purchase or possession" of over-the-counter kits. Dkt. #10 at 15. But instead of proscribing

10   the possession by sexual assault survivors, the Legislature has logically legislated by prohibiting

11   their sale and distribution, thereby protecting survivors as intended.

12        Leda's free speech claims fail.

13        **2.    HB 1564 is not vague**

14        Leda is also unlikely to succeed on its facial or as-applied vagueness claim. The

15   vagueness doctrine is concerned with due process and ensuring that a person "of ordinary

16   intelligence" is on reasonable notice of what a law prohibits so that they may conform their

17   behavior to the law. *Hill v. Colorado*, 530 U.S. 703, 732 (2000). For a facial vagueness challenge,

18   "the complainant must demonstrate that the law is impermissibly vague in all of its applications."

19   *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 497 (1982). A plaintiff

20   "who engages in some conduct that is clearly proscribed cannot complain of the vagueness of

21   the law as applied to the conduct of others." *Id.* at 495.

22        Leda's prior effort to distribute its EEKs in Washington, if done again, provides one

23   example showing that HB 1564 is not vague in all of its applications. Leda partnered with a

24   sorority to distribute EEKs to its members. Dkt. #11 ¶13. Through that partnership, Leda sought

25   to "sell . . . or otherwise make available" their EEKs, which squarely fall under the definition of

26   "sexual assault kit[s]." Leda describes its own EEKs as allowing survivors to "self-collect."

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

16

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Dkt. #1 ¶¶1, 12; Dkt. #11 ¶¶3, 6, 8; *see also* Simpson Decl., Ex. C at 3, 36. If Leda sought to enter into another similar partnership in Washington, a person "of ordinary intelligence" would understand that HB 1564 prohibits that conduct. Or, if a different corporation sold a product marketed as an at-home sexual assault kit on Amazon, a person "of ordinary intelligence" would likewise understand that HB 1564 prohibits selling the kits in Washington.[9] These are real-world, concrete examples, not far-fetched, overly vague scenarios. *See Cal. Tchrs. Ass'n v. State Bd. of Educ.*, 271 F.3d 1141, 1149, 1151 (9th Cir. 2001) (a statute survives a facial vagueness challenge if "it is clear what the statute proscribes 'in the vast majority of its intended applications'").

Leda's motion wrongly contends that HB 1564 is vague because it "bans a substantial amount of constitutionally protected speech[,]" Dkt. #10 at 21, but as shown above, HB 1564 does not ban constitutionally protected speech and instead prohibits conduct that is not protected by the First Amendment. *Supra* pp. 9–13.

HB 1564 also provides fair notice and sufficient standards to guard against arbitrary enforcement. *Kashem v. Barr*, 941 F.3d 358, 369–70 (9th Cir. 2019). For example, Leda argues it is "unclear" what conduct HB 1564 prohibits when stating "a person may not sell, offer for sale, or <u>otherwise make available</u> a sexual assault kit . . . . " Wash. Rev. Code § 5.70.070(2) (underlined for clarity). But its hypotheticals focus on individual non-commercial actors, and Leda cannot claim vagueness as applied to them. *Vill. of Hoffman Ests.*, 455 U.S. at 497. Moreover, read in conjunction with the other words in the list, the phrase "otherwise make available" refers to actions related to "sell" and "offer for sale" without listing every such iteration. *See Gustafson v. Alloyd Co.*, 513 U.S. 561, 562 (1995) (inferring the statutory meaning of a particular word in a list based on context from the other terms used in the list); *Yates v. United States*, 574 U.S. 528, 543 (2015) (under the canon of *noscitur a sociis*, "a word is known by the company it keeps"). Here, "otherwise make available" would encompass, for example, a company that gives out free at-home sexual assault kits with the sale of drink spiking test kits,

_____

[9] *See* Knight, *supra* n.5.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

17

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  or a company that enters into a payment plan with an organization that then distributes at-home

2  sexual assault kits to its members at cost.

3        Leda also takes issue with HB 1564's language prohibiting the sale of "a sexual assault

4  kit . . . [t]hat is marketed or otherwise presented as over-the-counter, at-home, or self-collected,

5  or <u>in any manner</u> that indicates that the sexual assault kit may be used for the collection of

6  evidence of sexual assault other than by law enforcement or a health care provider . . . ." Wash.

7  Rev. Code § 5.70.070(2)(a) (underlined for clarity). Again, taken in context and read together

8  with the "neighboring words with which it is associated," *Williams*, 553 U.S. at 294, "in any

9  manner" is not a vague phrase. Instead, given the terms "over-the-counter," "at-home," and "self-

10  collected," the "in any manner" language refers to related ways in which a sexual assault kit may

11  be used for evidence collection outside of a medical or law enforcement setting. For example,

12  although not explicitly listed, a sexual assault kit presented as "do-it-yourself" or "self-test"

13  would fall within the bounds of HB 1564.

14        Leda also challenges the definition of "sexual assault kit" in isolation but ignores that the

15  statute modifies the kinds of kits that cannot be sold or distributed. *See* Wash. Rev. Code

16  § 5.70.070(2)(a)–(b).

17        Finally, Leda makes only a passing argument that HB 1564 is "unconstitutional as

18  applied to Leda Health's business practices and protected speech" without elaboration. Dkt. #10

19  at 22. Because Leda fails to describe a particular application of the statute, it cannot succeed on

20  the merits of an as-applied vagueness claim either.

21        HB 1564 uses terms that are "reasonably clear," *Vill. of Hoffman Ests.*, 455 U.S. at 505,

22  to prohibit the sale and distribution of self-collected sexual assault kits.

23      **3.**    **HB 1564 is not overbroad**

24        Leda is not likely to succeed on the merits of its claim that HB 1564 is overbroad. "A

25  litigant cannot make an as-applied overbreadth argument; an overbreadth challenge must be

26  addressed to the facial validity of a statute." *Diaz v. Messer*, 742 F. App'x 250, 253 (9th Cir.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

18

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    2018) (unpublished). A law is unconstitutionally overbroad only if covers a substantial amount

2    of protected speech as compared to its plainly legitimate sweep. *Williams*, 553 U.S. at 292–95.

3    Courts "vigorously enforce[] the requirement that a statute's overbreadth be *substantial*[.]" *Id.*

4    at 292. "Application of the overbreadth doctrine in this manner is, manifestly, strong medicine[]"

5    and should be used "sparingly and only as a last resort." *Broadrick v. Oklahoma*, 413 U.S. 601,

6    613 (1973). Thus, an example of some conceivable misapplication of a law is not sufficient to

7    make out an overbreadth claim where there are abundant contexts in which the challenged law

8    can be applied. *Williams*, 553 U.S. at 292.

9         Here, Leda fails at the threshold because, as detailed above, HB 1564 does not regulate

10   speech at all. *Supra* pp. 9–13. And even if this Court were to find that the law regulates speech,

11   it regulates only commercial speech, to which the overbreadth doctrine does not apply. *See Am.*

12   *Acad. of Pain Mgmt. v. Joseph*, 353 F.3d 1099, 1111–12 (9th Cir. 2004) (citing *Vill. of Hoffman*

13   *Ests.*, 455 U.S. at 497); *Bd. of Trs. of State Univ. of N.Y.*, 492 U.S. at 483 (reaffirming "the

14   nonapplicability of overbreadth analysis to commercial speech"). These points end the inquiry.

15        But even if this Court were to reach the issue, Leda's argument that the defined terms

16   "sexual assault kit" and "person" are overbroad is unpersuasive. Read in context of the statute,

17   this language covers the sale and distribution of sexual assault kits that are not administered by

18   a medical professional or law enforcement. Leda's examples of overbroad enforcement of

19   HB 1564 are red herrings. *See* Dkt. #10 at 22. Giving a classmate a Q-Tip or tissue would not

20   fall within the statute because those items alone are not presented as over-the-counter sexual

21   assault kits. Moreover, isolated hypotheticals are not sufficient to establish overbreadth covering

22   substantial, disproportionate amounts of protected speech. *See United States v. Hansen*, 599 U.S.

23   762, 770 (2023) ("To justify facial invalidation, a law's unconstitutional applications must be

24   realistic, not fanciful, and their number must be substantially disproportionate to the statute's

25   lawful sweep.").

26

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

19

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

HB 1564 clearly describes the conduct it regulates: namely, the sale of products intended for use as over-the-counter, at-home, or self-collected sexual assault kits.

### 4.    HB 1564 is not an unconstitutional bill of attainder

Leda is unlikely to succeed on the merits of its claim that HB 1564 is an unconstitutional bill of attainder. The Constitution states that "[n]o State shall . . . pass any Bill of Attainder[.]" U.S. Const., art. I, § 10, cl. 1. To violate the Bill of Attainder Clause, a statute must (1) specify the affected persons, and (2) inflict punishment (3) without a judicial trial. *SeaRiver Mar. Fin. Holdings, Inc. v. Mineta*, 309 F.3d 662, 668 (9th Cir. 2002).[10] Even if a law singles out an individual, if it "furthers a nonpunitive legislative purpose, it is not a bill of attainder." *Id.* at 674. HB 1564 neither singles out nor inflicts punishment on Leda.

### a.    HB 1564 does not apply exclusively to Leda

Turning to the specificity factor, HB 1564 does not call Leda out by name and instead "describes the affected population in terms of general applicability." *SeaRiver*, 309 F.3d at 669; *see* Wash. Rev. Code § 5.70.070 (prohibiting a "person" from selling over-the-counter sexual assault kits). Nor was Leda's identity "easily ascertainable" when the legislation was passed. While Leda's EEKs are examples of the type of kits prohibited from sale, the law applies to any person or company that would do the same. And contrary to Leda's assertions, other companies have previously marketed do-it-yourself sexual assault kits. *Supra* p. 7.

Leda is also not "easily ascertainable" because the law does not describe the targeted class in terms of their *past conduct*. *See Hettinga v. United States*, 677 F.3d 471, 477 (D.C. Cir. 2012). HB 1564 does not use past conduct to designate a particular person or targeted class, but instead, turns on *future* business decisions to sell or distribute DIY sexual assault kits. *See id.* (rejecting argument that law affecting only plaintiffs' businesses applied with specificity because it was based on future volumes and markets); *Franceschi v. Yee*, 887 F.3d 927, 942 (9th Cir.

---

[10] The Ninth Circuit has not determined whether corporations may seek the protection of the Bill of Attainder clause but has assumed without deciding the clause protects corporations. *Fowler Packing Co. v. Lanier*, 844 F.3d 809, 817 (9th Cir. 2016).

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

20

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1    2018) (state law publicly listing top 500 delinquent taxpayers was not specific because the list

2    could change over time and effect "is not limited to any particular group in existence at the time

3    of the statute's enactment").

4         Leda's motion misleadingly points to an email sent by HB 1564's sponsor to assert that

5    legislators "asked for meetings with Leda Health" regarding the bill. Dkt. #10 at 23. In reality,

6    that email refers to meetings *requested by Leda*. Dkt. #11-5 at 2. Leda spuriously states that bill

7    sponsors discussed with media "ways in which the bill 'targets Leda Health.' " Dkt. #10 at 24.

8    But the article never quotes the sponsor as saying the law "targets Leda Health."[11] Leda further

9    complains that it was "directly called out" by name in a Senate Bill Report but omits that the

10   report included the affiliations of people testifying for or against the bill, and Leda employees

11   testified against HB 1564. *Compare* Dkt. #10 at 5, *with* Wolf Decl., Ex. C (HB 1564 Senate Bill

12   Report). By its plain text, HB 1564 regulates people and businesses who sell, offer to sell, or

13   make available over-the-counter sexual assault kits—not just Leda.

14        Leda was raised as an example of a business providing at-home sexual assault kits during

15   hearings on HB 1564, but it is not the only company that has ever sold or considered selling such

16   kits. *Supra* p. 7. And the legislative history and text of the statute show the purpose of the law is

17   to protect sexual assault survivors from the evidentiary challenges these kits present—regardless

18   of the kit's maker. At bottom, even if HB 1564 began with specific concerns about the EEKs

19   Leda distributed within Washington, "[i]t is utterly commonplace for legislation to be incited by

20   concern over one person or organization . . . . Not the motive or stimulus, but the generality and

21   consequences, of an enactment determine whether it is really legislation or really something

22   else." *L C & S, Inc. v. Warren Cnty. Area Plan Comm'n*, 244 F.3d 601, 604 (7th Cir. 2001).

23   Otherwise, Leda's arguments would mean legislative acts born out of concerns of one person or

24   entity—like the Sherman Act in response to John D. Rockefeller's monopoly or the Sarbanes

25   ───────────────
        [11] Brett Davis, *Legislation to ban OTC rape kits in Washington debated at Senate public hearing*, The
26   Center Square (Mar. 9, 2023), https://www.thecentersquare.com/washington/article_b138a862-bec1-11ed-bd7b-8b4be3521146.html.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

21

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

Oxley Act following the Enron scandal—are unconstitutional bills of attainder. That is not the law.

### b.    HB 1564 does not inflict punishment on Leda without judicial review

Leda's bill of attainder claim additionally fails because HB 1564 does not inflict punishment. Three inquiries guide this result. *See SeaRiver*, 309 F.3d at 673.

First, HB 1564 shows none of the historical means of punishment that characterize an unconstitutional bill of attainder. HB 1564 does not sentence a named individual to death, imprisonment, banishment, or prevent designated people or groups from pursuing a particular vocation. *See id.* Contrary to Leda's assertion, the law does not "banish" or otherwise keep Leda from operating in Washington. Dkt. #10 at 25. Setting aside that "banishment" refers to individuals, *SeaRiver*, 309 F.3d at 673, Leda also offers STI testing, toxicology screenings, educational workshops, and emergency contraceptives; passage of HB 1564 does not prevent Leda from offering these other services to Washingtonians.[12]

Second, Leda has not carried its burden to show that HB 1564 is "not merely the legitimate regulation of conduct." *SeaRiver*, 309 F.3d. at 674. HB 1564 indisputably furthers nonpunitive purposes. The Legislature specified its aim of supporting "survivors of sexual offenses through building victim-centered, trauma-informed systems that promote successful investigations and prosecutions of sexual offenses[]" and its view that "[t]horough and professional investigations, including preservation of forensic evidence, are imperative and a fundamental component in achieving these outcomes." 2023 Wash. Sess. Laws, ch. 296, § 1.

Third, HB 1564's legislative record is "probative of nonpunitive intentions" and does not show that the Legislature "found it expedient openly to assume the mantle of judge—or, worse still, lynch mob." *SeaRiver*, 309 F.3d at 676 (cleaned up). Leda points only to the Legislature's decision to make the sale and distribution of over-the-counter sexual assault kits a per se

---

[12] *See* Hr'g Before H. Comm. on Cmty. Safety, Just., & Reentry, *supra* note 4, at 1:48:01–1:48:14 (explaining additional services Leda offers); *id.* at 2:01:26–2:02:07 (Leda officer stating Leda could provide other services if HB 1564 passed).

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

22

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

1  violation of the CPA after the Attorney General issued a cease-and-desist letter under the general

2  CPA against Leda. Dkt. #10 at 25. But it's not unusual for the Legislature to make certain

3  statutory violations per se violations of the CPA. Many statutes are structured this way. *See* 6A

4  *Wash. Prac., Wash. Pattern Jury Instr. Civ.* WPI 310.03L (7th ed.) (citing many statutes). The

5  legislative record reflects the aim of protecting sexual assault survivors against future at-home

6  sexual assault "evidence kits" as expressed by prosecutors, law enforcement, health

7  practitioners, advocates, and students. *See supra* pp. 5–7; Wolf Decl., Exs. C, D. And as one

8  supporter testified, HB 1564 was needed because other companies had created or were working

9  to create similar products. Hr'g Before H. Comm. on Cmty. Safety, Just., & Reentry, *supra* note

10  4, at 2:05:50–2:06:44.

11  **B.     Leda Cannot Show Irreparable Harm Absent an Injunction**

12       Leda cannot carry its burden to demonstrate that "irreparable injury is likely in the

13  absence of an injunction." *Winter*, 555 U.S. at 22 (emphasis omitted). Leda's only argument on

14  irreparable harm is its asserted likelihood of success on the merits. Dkt. #10 at 26. But Leda has

15  not shown irreparable harm for several reasons.

16       First, Leda's claims are meritless. Second, even in the First Amendment context, the

17  Supreme Court has stated that "[a]s a matter of equitable discretion, a preliminary injunction

18  does not follow as a matter of course from a plaintiff's showing of a likelihood of success on the

19  merits." *Benisek v. Lamone*, 585 U.S. 155, 158, 160–61 (2018)  (per curiam) (affirming denial

20  of a preliminary injunction based on equities and public interest even assuming likelihood of

21  success on First Amendment challenge). Third, Leda's decision not to seek relief until nearly a

22  year after HB 1564 took effect undermines any claim of irreparable harm. *Oakland Trib., Inc. v.*

23  *Chron. Pub. Co.*, 762 F.2d 1374, 1377 (9th Cir. 1985) ("Plaintiff's long delay before seeking a

24  preliminary injunction implies a lack of urgency and irreparable harm."); *Wreal, LLC v.*

25  *Amazon.com, Inc.*, 840 F.3d 1244, 1248 (11th Cir. 2016) (delay of "even only a few months . . .

26  militates against a finding of irreparable harm"). Leda was well aware of the existence of

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE                              23                  ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

HB 1564 going back to February 2023, having testified against it before the Legislature. Its delayed actions belies any need for immediate relief.

**C.    The Balance of Equities and Public Interest in Protecting Investigations and Prosecutions of Sexual Assault Weigh Heavily Against Leda's Requested Injunction**

The final two *Winter* factors—the balance of the equities and the public interest—also weigh heavily in the State's favor. Where the government is a party, these factors merge. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014).

Leda argues the alleged constitutional violations are enough, Dkt. #10 at 27, but Leda is not likely to prevail on the merits of its claims. And the equities and public interest tip sharply in the State's favor because the State's "inability to enforce its duly enacted plans clearly inflicts irreparable harm on the State." *Abbott v. Perez*, 585 U.S. 579, 602 n.17 (2018). That is because the State "suffers . . . irreparable injury" whenever it is barred "from effectuating statutes enacted by representatives of its people[.]" *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers).

Beyond this interest, the public has a strong interest in preventing unfair and deceptive exploitation of sexual violence survivors from products marketed as collecting "evidence," but that have never been successfully admitted as evidence in a criminal trial in Washington. Robnett Decl. ¶16; Tunheim Decl. ¶16; Dalan Decl. ¶8. It also has an interest in promoting thorough and professional investigations and prosecutions of sexual offenses. 2023 Wash. Sess. Laws, ch. 296, § 1; *see also Mitchell v. Atkins*, No. C19-5106-JCC, 2024 WL 755950, at *3 (W.D. Wash. Feb. 23, 2024) ("Indeed, there are few interests more paramount to state governments than protecting public safety, and especially 'the suppression of violent crime and vindication of its victims.'" (quoting *Morrison*, 529 U.S. at 618)). HB 1564 prevents diversion from SANEs, who can properly preserve forensic evidence and provide medical treatment and accurate information about options, reporting processes, and community resources. *See* Simpson Decl. ¶¶9–10, 22,

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

24

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200

24, 32; Satake Decl. ¶¶20–21; Mukhopadhyay Decl. ¶8. The sale and distribution of over-the-counter sexual assault kits hinders the State's interest in these outcomes.

Leda's interest in profiting from its self-collection kits does not outweigh the public's interest in protecting survivors of sexual violence. The balance of harms and the public interest weigh decidedly against Leda's preliminary injunction request.

## V.    CONCLUSION

The Court should deny Leda's motion.

DATED this 26th day of July 2024.

ROBERT W. FERGUSON
*Attorney General*

*s/ Cristina Sepe*
CRISTINA SEPE, WSBA 53609
TERA M. HEINTZ, WSBA 54921
*Deputy Solicitors General*
LUCY WOLF, WSBA 59028
*Assistant Attorney General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Cristina.Sepe@atg.wa.gov
Tera.Heintz@atg.wa.gov
Lucy.Wolf@atg.wa.gov

*Attorneys for Defendants Governor Jay R. Inslee and Attorney General Robert W. Ferguson*

I certify that this memorandum contains 8,400 words, in compliance with the Local Civil Rules.

DEFENDANTS' OPPOSITION TO
PLAINTIFF'S MOTION FOR
PRELIMINARY INJUNCTION
NO. 2:24-CV-00871-DGE

25

ATTORNEY GENERAL OF WASHINGTON
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200